James Nuttall was indebted to William Robards upon two bonds for the sum of $666.66 1/3 each, bearing date 10 November, 1837, and payable one day after date, and Alexander H. Nuttall and Charles N. Nuttall were sureties in both; one of those notes was indorsed by the obligee to William D. Williams, who brought suit on it against the obligors and recovered judgment in Granville. James Nuttall was also indebted to William Robards in two other bonds, bearing date 3 February, 1838; one for $749.99, due one day after date, and the other for $1,104, *Page 298 
payable on 1 May, 1838, with interest from 1 June, 1837. On 3 February, 1838, James Nuttall conveyed to the defendant Horace L. Robards five slaves, a tavern and lots in Oxford, sundry articles of furniture, horses, cattle, and a barouche, wagon, and other chattels, and assigned to him all his interest and share in the estate of assignor's father, John Nuttall then lately deceased, upon trust to sell the real and personal estate upon the terms therein specified and collect the money and pay the debts due as aforesaid to William Robards, and also, in case the said James should not by a certain day discharge the debt due to William D. (423) Williams, for which William Robards was liable as indorser, to pay out of the said money into the hands of the said William Robards a sum sufficient to pay what might be due thereon.
The bill was filed in March, 1846, against Horace L. Robards, the trustee and the executor of his father, William Robards, who had in the meanwhile died; and it states that, by sundry payments, made by James Nuttall to William Robards or to the defendants, and the proceeds of the real estate and certain parts of the personalty, the whole of the debts had been satisfied before 7 August, 1839, except the judgment to Williams, and the further sum of $442.18 remaining due to William Robards on the other debts; that the five negroes, besides some others of the chattels, still remained unsold and in the hands of James Nuttall; and that the present plaintiff was before and then a creditor of James Nuttall by judgments in Granville, on which writs of fieri facias were in the hands of the sheriff of Granville, and had been, as well as an execution on the judgment of Williams, levied on the said slaves and other effects so remaining unsold; that the plaintiff, in order to put it out of the power of any other person to prevent him from reaching and selling the said property by his executions, purchased the debts so due to Williams, and took an assignment of the judgment, and also on 7 August, 1839, caused William Robards to be duly released from all liability as andorser [an endorser] of the bond, and gave his own bond to William Robards for the said sum of $442.18, which was accepted by him in satisfaction of the balance due to him on all the debts mentioned in the deed of trust, and was so expressed in the bond; that some of the negroes were removed by Nuttall from Granville to Warren County, and were there sold by other creditors on execution, and the purchasers had acquired a good title by a possession of more than three years, and that by reason thereof the plaintiff failed to obtain satisfaction of his said debts by (424) executions at law; that the plaintiff did not seek to charge the defendant for the loss of the said slaves; but that he insisted he was entitled to be satisfied out of any other funds of the trust in the hands of the defendants as trustees, or which remained undisposed of; that two of the slaves and some other articles had been sold under the *Page 299 
executions after August, 1839, by the sheriff of Granville, who held the proceeds in his hands and would not apply them without the consent of the defendant, upon the ground that the debts secured in the deed must first be paid thereout; and also that, after that period, the defendant, as the assignee of James Nuttall under the deed of trust, received certain sums, amounting to nearly $700, as and for the share of James Nuttall in the estates of John Nuttall, and never accounted for the same to James Nuttall nor to the plaintiff; that the plaintiff was entitled to have those sums applied to the satisfaction of the judgment in the name of Williams, and to reimburse to him the sum so paid by him to William Robards and also to have any parts of the property remaining on hand sold, and the proceeds applied to the discharge of the residue of those debts and of the other judgments of the plaintiff against James Nuttall; and that, being so entitled, he applied to the defendant Horace L. to account to him accordingly; but that they were not able to concur about the sum in the hands of said Horace L. as trustee, and that thereupon they mutually agreed that the same should be ascertained and determined by the arbitrament of two persons, David J. Young and James M. Wiggins, and that on 22 May, 1844, the arbitrators awarded that the defendant should pay to the plaintiff the sum of $682 as the balance then in his hands as trustee, which was received after 7 August, 1839; that the same, when paid, will not satisfy all the debts from James Nuttall to the plaintiff, and that the defendant is bound now to pay that sum and also to take whatever other steps may be necessary to dispose of the other specific effects not yet sold, and to (425) apply the proceeds to the satisfaction of the several demands of the plaintiff. The prayer is that a decree may be made accordingly, and to that end that the defendant may render an account, and discover the several matters charged, and also what part of the property remains unsold, and for general relief.
The alleged award is annexed to the bill and is as follows:
"Wyatt Cannady against Horace L. Robards. Referred to the undersigned for settlement.
"Wyatt Cannady having on 7 August, 1839, executed to William Robards his bond, expressing on its face to be in full for the demands of said Robards under the deed of trust from James Nuttall, we find that Horace L. Robards did afterwards receive of the funds of James Nuttall $682, and this sum being in his hands of the trust funds, we award that it shall be applied to the payment of such claims then due to Wyatt Cannady against James or Alexander Nuttall, or any other person, as by the operation of law created a valid lien on said funds to the amount thereof — provided claims of the above description shall then have existed *Page 300 
or been since created; and, if not, after satisfying such as do exist, with the interest thereon, the surplus, if any, to be applied according to the directions contained in the deed."
The answer states that, besides the judgment assigned by Williams to the plaintiff, he, the plaintiff, claimed to be creditor of James Nuttall by several other judgments, and that he had executions thereon levied on three of the five slaves, which were offered for sale on 6 August, 1839, when the defendant forbade it; that in consequence thereof an arrangement was made between the plaintiff and William Robards, on the next day, the object of which was to enable the plaintiff to sell those three slaves under his executions, which the said William was willing (426) should be done if the plaintiff would become responsible to him for $442.18, part of the debt of James Nuttall to him, and release him, Robards, from liability as indorser of the bond to Williams, and agree further that the trust funds should be wholly freed and discharged from all liability to the plaintiff, and that he should not be entitled to the satisfaction of any of his demands out of the trust property; and that it was then so agreed between those two persons. The answer admits that the plaintiff's bond to William Robards was expressed to be in full of the debt of James Nuttall to the latter; but it avers that such was not the fact, and that it was thus expressed for the satisfaction of the sheriff and to enable the plaintiff to effect an immediate sale of the three negroes on the executions, and that the same was done accordingly, and to have the proceeds applied to the benefit of the plaintiff. Moreover, the answer states that there was a distinct understanding and agreement that a large balance was due to Robards, and that James Nuttall's interest in John Nuttall's estate was to be retained for such balance. The answer further states that all the property conveyed in the deed, which the defendant had not sold before August, 1839, had been sold under the executions of the plaintiff in Granville, or under those in Warren, which are mentioned in the bill; and that it was altogether the plaintiff's own fault, as he had been discharged from any duty in respect thereof by the plaintiff, as before mentioned.
The answer admits the defendant's receipt of the sum of $682, as alleged in the bill, and for the reasons before mentioned denies that the plaintiff is entitled to any part of it, and insists that it is applicable to the balance of the debts to William Robards; and an account is set forth which shows a balance yet due of $31.22 after applying that sum of $682. It also admits the reference to Young and Wiggins, but states that the arbitrators never came to a final determination, and that (427) they did not intend the paper annexed to the bill as an award, as *Page 301 
far as the defendant was informed and believes; and it insists, if it was so intended, that it is void because it does not order the money or any part of it to be paid to the plaintiff.
One of the arbitrators proves that the paper was intended as an award, and states his impression that it was communicated to the defendant.
The deposition of the sheriff of Granville states that he held the execution of Williams and several others in favor of Cannady against James and Alexander Nuttall, and that the plaintiff, in order to get in all the claims against those persons and prevent the creditors from sacrificing their property and save something for Alexander's family, agreed to take the judgment to Williams at the full amount of principal and interest due on it, and pay the debt to Colonel Robards; that, accordingly, on 7 August, 1839, the plaintiff paid up the sum due on the judgment and took an assignment of it, and also gave his bond to Robards for $442.18, which, upon a computation and adjustment between the parties, was ascertained to be the balance remaining due; and that it was the intention of those persons thereby to release the property from the deed of trust, so that it might be sold under the executions; and that he, the sheriff, did sell three of the negroes and applied the money, as far as it would go, to the satisfaction of Cannady's demands, and that he endeavored to seize the other negroes and personal property mentioned in the deed, but was unable, because James Nuttall carried it to Warren.
The plaintiff likewise examined James Nuttall to prove various payments to the defendant or his testator, and that there was a balance of the trust fund in the defendant's hands after discharging the debts secured by the deed.
The plaintiff cannot have relief upon the footing of the award, which seems to have been the purpose of the bill. As an award for the payment of money merely, the remedy is at law, and performance cannot be compelled by bill, as it might if it had been for the conveyance of an estate. Hall v.Hardy, 3 Pr. Wms., 187; Wood v. Griffin, 1 Swans., 54; Bouck v. Wilber, 4 John. C. C., 405. But if it were otherwise, this award is so defective upon its face, in not ascertaining any sum to be due the plaintiff or awarding any sum in particular to be paid to him, that it cannot be sustained. It merely decides that the defendant holds $682 of the trust fund, not necessary for the payment of the debts to William Robards, and awards that the defendant shall pay it to the plaintiff or any other person who may have such claims as by law constitute a lien on it. Being neither certain nor final, it could not be sustained at law nor enforced here. *Page 302 
It was next said that the plaintiff was entitled to an account, independent of the award, and to a decree for the satisfaction of his judgments out of may balance that may be found in the defendant's hands. As the bill does not seek to make the defendant liable for more than is in his hands, and the answer accounts for his receiving the proceeds of John Nuttall's estate in a manner which, under the circumstances, is not at all satisfactory, the Court would willingly send the cause to the master if the frame of the bill and the facts of the case were such as to allow it. But we think they are not. In the first place, it is nearly admitted in the bill that the plaintiff took the assignment from Williams and made the payment to William Robards under an agreement (429) that he would look to James Nuttall and to the remedy at law by judgments and executions, to obtain satisfaction, and that he was not to have recourse in any event to the deed of trust or to the defendant or his father. At all events, the answer states that fact positively, and in that respect it is supported by the testimony of the sheriff, who makes it plain that the whole purpose of the agreement was to get clear of the deed, so that the plaintiff might use his executions. If the construction of the deed be that, in reference to the debt transferred to Williams, it did not provide merely for the indemnity of W. Robards as indorser, but was a security for the debt itself, yet the assignment of the bond or judgment to the plaintiff could not carry the benefit of the deed of trust as a further collateral security, in opposition to the express stipulation of the plaintiff with William Robards and the trustee, that it was renounced. But if the plaintiff were not fettered by that agreement, and came simply as assignee of one of the debts secured by the deed, for an account and satisfaction, in which case he ought to have the benefit of the deed (Miller v. Hoyle, ante, 269), still he could not be relieved on this bill, because his assignor and the debtors, the Nuttalls, would be indispensable parties, both for the protection of their interest and for the security of the trustee. So if the plaintiff be not regarded as a creditor provided for in the deed, but as filing the bill in the character of a judgment creditor merely, his case is still more defective; for the same persons would be necessary parties, and, besides, the bill does not allege a return of nulla bona, nor the insolvency of the debtors, nor plaintiff's inability to obtain satisfaction at law. In fine, it appears almost certain that the bill was not drawn with any view to an account upon either of those grounds, but only to entitle the plaintiff, either as the party to the alleged award or as a person who might claim under it, to have satisfaction out of the specific sum found by the arbitrators to be (430) in the defendant's hands. As he cannot have that, as has been already *Page 303 
stated, he must fail altogether; for although the defendant may be liable to James Nuttall, the maker of the deed, he cannot be called to account by the plaintiff upon the facts now appearing.
PER CURIAM. Bill dismissed with costs.